UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. |
| | ) | |
| v. | ) | |
| | ) | |
| ATM GLOBAL SYSTEMS, INC., a Florida corporation, | ) | |
| | ) | |
| MARK RICHMAN, individually, and as an officer of ATM Global Systems, Inc., and | ) | **FILED: APRIL 24, 2008** |
| | ) | **08CV2338          AEE** |
| NATHANIEL SEIDMAN, individually, and as an officer ATM Global Systems, Inc., and doing business as GPC MARKETING LTD., | ) | **JUDGE KENNELLY** |
| | ) | **MAGISTRATE JUDGE DENLOW** |
| | ) | |
| Defendants. | ) | |

COMPLAINT FOR CIVIL PENALTIES,
PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), pursuant to

Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its

complaint alleges:

1.     Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the

FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and under Section 7(a)

of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003

("CAN-SPAM"), 15 U.S.C. § 7706(a), to secure civil penalties, a permanent injunction,

and other equitable relief for Defendants' violations of Section 5(a) of CAN-SPAM, 15 U.S.C. § 7704(a).

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a), 57b, and 7706(a), and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355. This action arises under 15 U.S.C. § 45(a).

3.    Venue in the United States District Court for the Northern District of Illinois is proper under 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1391 (b-c) and 1395(a).

## DEFENDANTS

4.    Defendant ATM Global Systems, Inc. ("ATM Global") is a Florida corporation with its principal address at 10211 Crosswind Rd., Boca Raton, Florida 33498.

5.    Defendant Mark Richman is president of ATM Global. Richman has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint.

6.    Defendant Nathaniel Seidman is vice-president of ATM Global. Seidman has formulated, directed, controlled, or participated in the acts or practices set forth in this Complaint. Seidman also does business as GPC Marketing Ltd.

7.    "Defendants" means ATM Global, Mark Richman and Nathaniel Seidman.

8.    Defendants have transacted business in the Northern District of Illinois and throughout the United States.

## COMMERCE

9.  At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFINITIONS

10. "**Electronic mail message**" (or "email") means a message sent to a unique electronic mail address. 15 U.S.C. § 7702(6).

11. "**Electronic mail address**" means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered.  15 U.S.C. § 7702(5).

12. "**Commercial electronic mail message**" means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including the content on an Internet website operated for commercial purposes).  15 U.S.C. § 7702(2).

13. "**Header information**" means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message. 15 U.S.C. § 7702(8).

14. "**Initiate**," when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message. 15 U.S.C. § 7702(9).

15.    **"Procure,"** when used with respect to the initiation of a commercial email message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf. 15 U.S.C. § 7702(12).

16.    **"Protected Computer"** means a computer which is used in interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. 15 U.S.C. § 7702(13).

17.    **"Sender"** means a person who initiates a commercial email message and whose product, service, or Internet Web site is advertised or promoted by the message. 15 U.S.C. § 7702(16).

## DEFENDANTS' BUSINESS ACTIVITIES

18.    Since at least January 2006, and continuing to the present, Defendants have initiated the transmission of commercial email messages to protected computers. The primary purpose of these commercial email messages has been the commercial advertisement or promotion of Internet Web sites operated for a commercial purpose by Defendants.

19.    Defendants operate numerous Web sites consisting of sexually oriented material. These Web sites advertise a purported Internet dating service called "SexyFriends" containing men and women searching for casual sexual relationships. Defendants' Web sites include funhooknups.com, joindatingfun.com and edatefuntimes.com. Consumers who visit Defendants' Web sites are invited to join Defendants' paid-content Web sites, including sexyfriendsearch.com. Defendants collect payment for memberships to their paid-content Web sites.

4

20.     Defendants' Web sites are promoted by commercial email messages. The commercial email messages direct consumers to Defendants' paid-content Web sites by containing hyperlinks that, when clicked, take consumers to Defendants' Web sites.

21.     Defendants "initiate" a commercial email message when they have either originated or transmitted a message themselves or have procured the origination or transmission of a message through payments or other consideration, or inducements.

22.     Defendants are "senders" with respect to a commercial email message when they have initiated a message and it is Defendants' Web sites that are being advertised or promoted by such message.

23.     Defendants have initiated commercial email messages containing materially false or misleading header information. In many instances, the email contains an originating email address that was not assigned by the email service provider or was used without the authorization of the subscriber who obtained the email address from the email service operator. In other instances, the email message fails to identify accurately the protected computer used to initiate the message because the email message was relayed or retransmitted through another protected computer for purposes of disguising its origin.

24.     Defendants' commercial email messages fail to include clear and conspicuous notification to recipients of their ability to decline receiving future email messages from Defendants. In many instances, Defendants' commercial email messages include only vague indications of recipients' rights to decline receiving future email messages from Defendants.

25.     Defendants have initiated commercial email messages that failed to include a valid physical postal address of the sender.

## THE CAN-SPAM ACT

26.    CAN-SPAM, 15 U.S.C. § 7701 *et seq.*, became effective on January 1, 2004, and has

since remained in full force and effect.

27.    Section 5(a)(1) of CAN-SPAM, 15 U.S.C. § 7704(a)(1), states:

> It is unlawful for any person to initiate the transmission, to a
> protected computer, of a commercial electronic mail message . . .
> that contains, or is accompanied by, header information that is
> materially false or materially misleading.

28.    Section 5(a)(6) of CAN-SPAM, 15 U.S.C. § 7704(a)(6), states:

> For purposes of [section 5(a)(1)], the term "materially", when used
> with respect to false or misleading header information, includes the
> alteration or concealment of header information in a manner that
> would impair the ability of an Internet access service processing
> the message on behalf of a recipient, a person alleging a violation
> of this section, or a law enforcement agency to identify, locate, or
> respond to a person who initiated the electronic mail message or to
> investigate the alleged violation, or the ability of a recipient of the
> message to respond to a person who initiated the electronic
> message.

29.    Section 5(a)(3) of CAN-SPAM, § 7704(a)(3) states:

> It is unlawful for any person to initiate the transmission to a
> protected computer of a commercial electronic mail message that
> does not contain a functioning return electronic mail address or
> other Internet-based mechanism, clearly and conspicuously
> displayed, that –
> (i) a recipient may use to submit, in a manner specified in the
> message, a reply electronic mail message or other form of Internet-
> based communication requesting not to receive future commercial
> electronic mail messages from that sender at the electronic mail
> address where the message was received; and
>
> (ii) remains capable of receiving such messages or
> communications for no less than 30 days after the transmission of
> the original message.

30.    Section 5(a)(5)(A) of CAN-SPAM, § 7704(a)(5)(A) states:

It is unlawful for any person to initiate the transmission of any
commercial electronic mail message to a protected computer
unless the message provides:

    (i)    clear and conspicuous identification that the message is an advertisement
           or solicitation;

    (ii)   clear and conspicuous notice of the opportunity under [section 5(a)(3)] to
           decline to receive further commercial electronic mail messages from the
           sender; and

    (iii)  a valid physical postal address of the sender.

31.     Section 7(a) of CAN-SPAM, 15 U.S.C. § 7706(a), states:

[T]his Act shall be enforced by the [FTC] as if the violation of this
Act were an unfair or deceptive act or practice proscribed under
section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57(a)(1)(B)).

## COUNT I

32.     In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that contained, or were accompanied by,

header information that is materially false or materially misleading.

33.     Therefore, Defendants' acts or practices, as described in paragraph 32 above, violate

Section 5(a)(1) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(1).

## COUNT II

34.     In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that advertise or promote Defendants' Internet

Web sites, products or services, and do not include:

a.     a clear and conspicuous notice of the recipient's opportunity to decline to receive

further commercial electronic mail messages from Defendants at the recipient's

electronic mail address; and/or

7

b.  a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient could use to submit a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from Defendants at the electronic mail address where the message was received, and that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

35.  Therefore, Defendants' acts or practices, as described in paragraph 34 above, violate Section 5(a)(5)(A)(ii) and/or Section 5(a)(3) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(ii) and/or § 7704(a)(3).

## COUNT III

36.  In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that advertise or promote Defendants' Internet Web sites, products or services and do not include the senders' valid physical postal address.

37.  Therefore, Defendants' acts or practices, as described in paragraph 36 above, violate Section 5(a)(5)(A)(iii) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(iii).

## INDIVIDUAL AND BUSINESS INJURY

38.  Individuals and businesses throughout the United States and beyond have suffered, and continue to suffer, substantial injury as a result of Defendants' unlawful acts or practices. In addition, Defendants have been unjustly enriched as a result of their unlawful

practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

39.    Section 7(a) of the CAN-SPAM Act, 15 U.S.C. § 7706(a), provides that "[CAN-SPAM] shall be enforced by the [FTC] as if the violation of this Act were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. § 57a(a)(1)(B))." Accordingly, violations of the CAN-SPAM Act shall be enforced as if the violation were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the FTC Act (15 U.S.C. § 57a(a)(1)(B)), that is, these provisions shall be enforced as if the violation had been a violation of an FTC trade regulation rule. Furthermore, Section 18(d)(3) of the FTC Act provides that "[w]hen any rule under subsection (a)(1)(B) of [Section 18] takes effect a subsequent violation thereof shall constitute an unfair or deceptive act or practice in violation of section 45(a)(1) of this title[.]" 15 U.S.C. § 57a(d)(3).

40.    Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d) (1997), authorizes this Court to award monetary civil penalties of not more that $11,000 for each violation of CAN-SPAM. Defendants' violations of CAN-SPAM were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

41.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive

and other ancillary relief to prevent and remedy any violation of any provision of law

enforced by the FTC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, as authorized by Sections 5(a),

5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a),

and 57b, and pursuant to its own equitable powers:

1.  Enter judgment against Defendants and in favor of Plaintiff for each violation
    alleged in this complaint;

2.  Award plaintiff monetary civil penalties from Defendants for every violation of
    the CAN-SPAM Act;

3.  Enter a permanent injunction to prevent future violations of CAN-SPAM by
    Defendants;

4.  Award such relief as the Court finds necessary to redress injury resulting from
    Defendants' violations of the FTC Act and the CAN-SPAM Act, including, but
    not limited to, rescission or reformation of contracts, restitution, the refund of
    monies paid, and the disgorgement of ill-gotten monies;

5.  Order Defendants to pay the costs of this action; and

6.  Award Plaintiff such other preliminary and permanent equitable relief as the
    Court may determine to be just and proper.

Dated: _4/22/08_            Respectfully submitted,

OF COUNSEL:                 FOR THE UNITED STATES OF AMERICA
STEVEN M. WERNIKOFF        Jeffrey S. Bucholtz
MARISSA J. REICH              Acting Assistant Attorney General
Federal Trade Commission       Civil Division
55 W. Monroe St., Suite 1825      United States Department of Justice
Chicago, IL 60603
(312) 960-5634 [Telephone]      PATRICK J. FITZGERALD
(312) 960-5600 [Facsimile]       United States Attorney
                                 Northern District of Illinois

                                 DONALD R. LORENZEN
                                 Assistant United States Attorney
                                 219 S. Dearborn, 5th Floor
                                 Chicago, IL 60604

                                 EUGENE M. THIROLF
                                 Director,
                                 KENNETH L. JOST
                                 Deputy Director,
                                 Office of Consumer Litigation

                                 By: _____
                                 JOHN W. BURKE
                                 Trial Attorney, Office of Consumer Litigation
                                 U.S. Department of Justice
                                 P.O. Box 386
                                 Washington, D.C. 20044-0386
                                 (202) 353-2001 [Telephone]
                                 (202) 514-8742 [Facsimile]
                                 josh.burke@usdoj.gov [email]